FRANK v. WEDDERIN et al.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1895.)

No. 352.

1. PRACTICE—LIMITED APPEARANCE.

One who intervenes in a pending suit to protect a supposed interest, and therein presents all the issues he wishes, and makes all the defense he cares to make, cannot be permitted to avoid the effect of the judgment rendered upon such issues by limiting his appearance to the purpose of protecting his right and disclaiming an intention to make himself a party to the suit.

2. JUDGMENT—ESTOPPEL.

Three several creditors of the T. Co. commenced suits against it by attachment of its property and service of process. W. and others, claiming to be liquidating commissioners appointed upon a dissolution of the T. Co., and entitled to the possession and control of its property, filed motions in these suits, alleged to be for the sole purpose of protecting their possession and control, and without intention to make themselves parties to the suits, and, suggesting the dissolution of the corporation and their appointment, asked for the dismissal of the suits. After a full hearing upon such motions, in which W. and his associates introduced evidence, and examined and cross-examined witnesses, the motions were denied, and judgments given against the T. Co., and the attached property sold. No appeal was taken from these judgments. *Held*, that W. and his associates were estopped by the judgments, rendered upon their intervening motions, to set up a claim to the property sold under the attachment and executions, based on the same grounds upon which their intervening motions were based.

3. CORPORATIONS—DISSOLUTION.

It seems that the voluntary dissolution of a corporation, insolvent or otherwise, without public notice, and after its creditors have been driven into the courts, should be viewed with suspicion, and strict compliance with all legal formalities should be required.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This was an action by Carl Wedderin, W. A. Taylor, and John C. Linney, Jr., claiming to be liquidators of the Taylor Brothers Iron Works Company, Limited, against Michael Frank, to recover certain property sold to him under executions against that company. Upon the trial in the circuit court, a verdict was directed for the plaintiffs, and judgment rendered thereon. Defendant brings error. Reversed.

For decision in a former litigation involving the same controversy, see 54 Fed. 82.

On the 6th day of December, 1892, suits at law were commenced in the circuit court of the United States, Eastern district of Louisiana, by the Prentiss Tool & Supply Company and the Niles Tool Works, and on the 7th day of December by the Cleveland Forge & Iron Company, against the Taylor Brothers Iron Works Company, Limited, a business corporation chartered under the laws of the state of Louisiana. Attachments and sequestrations issued, under which the marshal seized and took possession of the defendant's property on said dates, and the defendant was cited in each case on the 7th day of December, 1892, by domicile service on the secretary, and subsequently by service of process on the president in person, December 19th. On the 14th day of December, 1892, Carl Wedderin, W. A. Taylor, and John C. Finney, Jr., defendants in error in the present case, appeared in said court, and filed in each case a motion and exception in the following words: "Now come Carl Wedderin, Walter A. Taylor, and John C. Finney, Jr., liquidating commissioners of the Taylor Brothers Iron Works Company, Limited, and for the sole purpose of protecting their possession and control of the assets and property of said company, and not intending to make themselves parties thereto, they bring to the notice of the court the following facts: That the Taylor Brothers Iron Works Company, Limited, sued and cited as defendant herein, was dissolved and lost its corporate existence on November 16, 1892, by resolution of a general meeting of its stockholders held on said date, in accordance with law and section 7 of the charter of said company, evidenced by act before J. D. Taylor, N. P., April 7, 1891, which said company thereby lost its capacity to sue or to be sued as a corporation or in its corporate name; that at said general meeting of the stockholders of said company, which dissolved the corporation, your appearers were appointed liquidating commissioners of said company, likewise in accordance with law and said section 7 of said charter. Now your appearers appointed liquidating commissioners under the resolution aforesaid move that they be allowed by the court to appear solely for the conservatory purpose of moving to dissolve the attachment herein issued, on the ground that the Taylor Brothers Iron Works Company, Limited, had been dissolved and ceased to exist at the time the attachment in this cause issued, and prior thereto. Now come Carl Wedderin, Walter A. Taylor, and John C. Finney, liquidating commissioners of the Taylor Brothers Iron Works Company, Limited, and suggest to the court the following facts: That the Taylor Brothers Iron Works Company, Limited, sued and cited as defendant herein, was dissolved and lost its corporate existence on November 16, 1892, by resolution of a general meeting of its stockholders held on said date, in accordance with law and section 7 of the charter of said company, evidenced by authentic act before J. D. Taylor, notary public, April 7, 1891. Wherefore appearers pray that this suit may be dismissed, with costs, and for general relief."

The cases were heard by the late Judge Billings upon these pleadings; and the motion to dissolve the attachments, and for the delivery of the property and dismissal of the suit, were denied on the 13th day of February, 1893, after a full trial on the merits. Judgments were rendered against the corporation in each of the cases on the same day for the amounts sued for, with recognition of the attachments. Executions issued upon these judgments in due course, and the property claimed in the case was sold thereunder by the marshal to Michael Frank on the 31st of May, 1893, for the price and sum of $42,000. The plaintiffs below (defendants in error here), after February 13, 1893, remained silent until April 2, 1894, when the present suit was brought against Mr. Frank to recover the property. As grounds of recovery, the plaintiffs allege in their petition that the Taylor Brothers Iron Works Company, Limited, was dissolved on the 16th day of November, 1892, by a resolution of its stockholders, convened for that purpose, and that they were appointed liquidators by the same resolution, and that the resolution was recorded in the mortgage office on the 6th day of January, 1893; that on the 7th day of December, 1892, they filed a petition in the civil district court, setting up the resolution of dissolution, and praying for a judicial recognition of their appointment as liquidators, which was granted on the same day; that on Decem-

ber 6th said suits were instituted against the company in the United States circuit court, and citation served on the president and secretary; that the liquidators, on December 14th, without making themselves parties, appeared in said circuit court, and called the fact of the dissolution of the corporation to the attention of the court; that the court disregarded these facts, and rendered final judgment against the corporation on the 16th day of February, 1893, under which the seized property was sold to Michael Frank; that such sale was absolutely void; that the liquidators took possession of the property under the order of court of December 7th, which related back to November 16th, and that the marshal unlawfully deprived them of this possession; that no legal citation was ever served on the said company; and that the judgments against it were void, because the corporation had been dissolved, and they were not at the time officers; and, finally, that, even if said proceedings of the United States circuit court were otherwise valid, that could not interfere with the jurisdiction of the state court, which was acquired prior to said seizure. The petition closes with a prayer for a decree annulling the sale to Frank, and for the possession of the property. The defendant filed a general demurrer to this petition. Upon the same being overruled, he filed an answer and plea, denying the alleged invalidity of the sale for any of the reasons set forth in the petition, and setting up the judgment of Judge Billings in the attachment cases, on the exceptions and motions of the liquidators as an estoppel.

Upon the trial of the case in the circuit court upon these issues, the plaintiffs offered in evidence (1) a copy of the opinion of Judge Billings on the exception and motion to dissolve the attachment in the three cases; (2) the stipulation signed by all the parties adopting the statement of facts contained in that opinion, as the facts upon which the judgment on the exception and motion of the liquidators was rendered; (3) the resolution of November 16th, purporting to dissolve the corporation; (4) the appearance of the liquidators, of which copies are hereinabove set out in full; (5) the deposition of Carl Wedderin, in which he testifies that the three liquidators were in possession of the property when taken by the marshal under the writs of attachment, and that no notice of the meeting for the dissolution was ever published, as required by the charter. The defendant offered in evidence (1) the exception and motion of the liquidators to dissolve the attachments in the three suits, which had also been offered by plaintiffs; (2) copies of the exceptions and motions of the liquidators and the order of court setting them down for trial; (3) a copy of the opinion of Judge Billings, and the agreed statement of facts already offered by the plaintiffs, as above stated; (4) copy of the charter of the Taylor Brothers Iron Works Company, Limited; (5) a copy of the judgment of Judge Billings denying the motion of the liquidators to dissolve the attachments.

The following admissions were mutually made to save costs: (1) that the Taylor Brothers Iron Works Company, Limited, owned the property in dispute on the 16th of November, 1892, the date of the alleged dissolution of the corporation; (2) that the attachments were levied and property taken possession of by the marshal December 6, 1892; (3) that the property was sold to Michael Frank May 31, 1892, under executions issued on final judgments rendered in the three attachment suits on the 13th day of February, 1893; (4) that the alleged resolution dissolving the corporation was recorded in the mortgage office January 6, 1893; (5) that the liquidators filed a petition in the civil district court December 7, 1892, praying for a judicial confirmation of their appointment, which was granted on that day, and that an inventory of the property was subsequently taken under an order of that court, and filed January 9, 1893.

This being the entire evidence in the cause, and there being no disputed fact, the circuit court directed a verdict in favor of the plaintiff, refusing a request to charge for the defendant upon the same facts, to which action defendant excepted, making the whole evidence part of the bill. From the final judgment of the circuit court against him, the case is brought here for review, upon the following assignment of errors: (1) The circuit court erred in directing the jury to find a verdict in favor of the plaintiffs, and in refusing to instruct the jury to render a verdict in favor of the defendant, as requested, upon the entire evidence and the law applicable thereto. (2) The circuit court erred in not maintaining the estoppel pleaded in the defendant's answer,

upon the undisputed facts in the case. (3) The circuit court erred in not holding that the judgment of Judge E. C. Billings, denying the motions of said alleged liquidators to dissolve the attachments in the suits at law of the Prentiss Tool & Supply Company and of the Niles Tool Works Company against the Taylor Brothers Iron Works Company, Limited, had the effect of estoppel against said liquidators, as set up in this defendant's answer. (4) It was error in the circuit court to rule that the final judgments in said suits at law, in which said pretended liquidators appeared and filed exceptions setting up the alleged dissolution of the Taylor Brothers Iron Works Company, Limited, and praying for the dismissal of the suits, did not estop the plaintiffs in this suit, as claimed in the defendant's answer. (5) If said estoppel was not well pleaded, then the court erred in holding that the resolution of the stockholders of Taylor Brothers Iron Works Company, Limited, dated November 16, 1892, operated as a dissolution of that corporation, without a publication of the notices required by the charter.

Max Dinkelspiel, W. O. Hart, J. D. Rouse, and Wm. Grant, for plaintiff in error.

Thomas J. Semmes and Branch K. Miller, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It was admitted on the hearing by the counsel for the defendants in error that, under the laws of the state of Louisiana, the voluntary dissolution of the Taylor Brothers Iron Works Company, Limited, if otherwise complete, did not take effect against creditors of the corporation until record was made of the dissolution in the mortgage office, which was on January 6, 1893. The record shows that, prior to the application of the elected liquidators to the state court, the attachments in the cases of the Prentiss Tool & Supply Company and the Niles Tool Works against the Taylor Brothers Iron Works Company, Limited, had been sued out in the United States circuit court, and had been levied on the property in controversy. We take it, then, that all questions of the validity of the original levy and of the proper custody of the property in the circuit court of the United States at the time of the contended dissolution of the corporation are eliminated from this case.

In Railroad Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. 155, it was declared:

"The jurisdiction of a court of the United States, once obtained over property by being brought within its custody, continues until the purpose of the seizure is accomplished, and cannot be impaired or affected by any legislation of the state, or by any proceedings subsequently commenced in a state court."

In Louisiana a corporation cannot avail itself of the provisions of the act relative to the voluntary surrender of property. Jeffries v. Iron Works Co., 15 La. Ann. 19. We know of no law in Louisiana, and counsel have suggested none, by which the voluntary dissolution of a corporation operates in any court a dissolution of attachments previously levied.

This brings us to the question whether the defendants in error (plaintiffs in the circuit court) are estopped by the judgment provoked by them in the circuit court in the cases of the Prentiss Tool & Supply

Company, the Niles Tool Works, and the Cleveland Forge & Iron Company, against the Taylor Brothers Iron Works Company, Limited; that is to say, to the question whether the defendants in error made themselves parties in those suits. The record shows that, thinking they had an interest in the subject-matter of the suits, they voluntarily appeared and suggested their interest; that they prayed for the dissolution of the attachments and the dismissal of the suits; that they were heard by the court, and introduced witnesses on their own behalf; and that, when judgment was rendered adverse to their demands, they abided the decision, whereby it became final. If they are, as they still claim to be, the liquidators of the Taylor Brothers Iron Works Company, Limited, they had an interest in the suits and a right to make a defense.

In Robbins v. Chicago, 4 Wall. 657, it is said:

"Conclusive effect of judgments, respecting the same cause of action, and between the same parties, rests upon the just and expedient axiom that it is for the interest of the community that a limit should be opposed to the continuance of litigation, and that the same cause of action should not be brought twice to a final determination. Parties in that connection include all who are directly interested in the subject-matter, and who had a right to make a defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment. Persons not having those rights substantially are regarded as strangers to the cause; but all who are directly interested in the suit, and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of those rights, are equally concluded by the proceedings."

See, also, Chicago v. Robbins, 2 Black, 418.

To the same effect are Cromwell v. County of Sac, 94 U. S. 351; Chamberlain v. Preble, 11 Alen, 370; Tredway v. Railroad Co., 39 Iowa, 663.

It is true that in their motion to dissolve the attachment the defendants in error say that they appeared in the circuit court for the sole purpose of protecting their possession and control of the assets and property of said company, and not intending to make themselves parties thereto, and in such motion they did move the court that they "be allowed by the court to appear solely for the conservatory purpose of moving to dissolve the attachment herein issued on the ground," etc.; and it may be conceded that a limited appearance was all that the defendants in error intended; but, as a matter of fact, they presented all the issues that they wished, and made all the defense to the suit that they cared to make. We understand that a limited appearance is permissible in a case where a person comes into a cause for the sole purpose of objecting to the sufficiency of original process, or to decline the jurisdiction of the court on account of some personal privilege or exemption. To extend the rule much further would be to permit parties in the case to test the court upon the sufficiency of defenses that might be made, and yet not bind the parties by the decision thus provoked. The original proceedings in the circuit court were on the law side of the court, and the practice there is according to the practice in like cases in the courts of Louisiana. In Louisiana the parties are competent to waive all matters of form.

In Trescott v. Lewis, 12 La. Ann. 197, it is said:

"It matters not that the proceeding by rule was irregular, since the party against whom it was taken, as a favor to his adversary, waived all questions of form, and joined issue on the merits. Here are all the elements of a suit at law,—actor, reus, et judex. The form of the proceeding is immaterial. If proper parties join issue upon questions, either of law or fact, before a competent court, they must abide by the decision."

A decision directly in point is Tyrrell v. Baldwin, 67 Cal. 1, 6 Pac. 867, where a judgment in a case entitled "McLeran v. McNamara," purporting to be against Tyrrell's grantors, Sarah and Charlie Mc-Donald, was offered by Baldwin to defeat his title. It appears that the McDonalds were not named as the defendants in the complaint, nor summoned as such, but that, some seven months after the complaint was filed, they voluntarily appeared, and filed answer, setting up defenses, but without any express leave of court. The case was tried on this answer, and judgment rendered aginst the McDonalds. In reversing the decision of the lower court excluding the record of the judgment in evidence, the supreme court says:

"The voluntary appearance of a defendant is equivalent to personal service of the summons and a copy of the complaint upon him. Appearance before being summoned confers jurisdiction equally with an appearance after being summoned. Under our practice, a person who is not named in the complaint, nor served with the summons, if he has an interest in the matter of the litigation, may become a party by obtaining leave of the court to file a complaint in intervention. Here the McDonalds, without objection or opposition, filed an answer, in which they denied all the allegations of the complaint, and alleged that they were the owners and entitled to the possession of a certain portion of the demanded premises. They were permitted to do, without opposition and by tacit consent, that which they might have done by leave of court. But why ask leave of the court to do that which nobody objected to their doing? They invoked the judgment of the court upon the issues raised by their answer to the complaint, and they got it. Can they now be heard to say that the judgment is a nullity because they obtruded themselves into the action? Their answer shows that they might properly have been made parties to it, and the record shows that they availed themselves of all the rights and privileges of which they could have availed themselves if they had been named and sued as defendants in the complaint. As soon as the answer was filed, the complaint might have been amended by adding the names of the McDonalds to those of the other defendants in the action."

The court held, upon review of the authorities, that a judgment thus rendered cannot be attacked collaterally, even if it might be reversed on appeal for irregularity.

See, also, 2 Black, Judgm. § 540.

It is, however, contended that although the defendants in error appeared in the circuit court in the attachment cases, there presented their matters of law and fact, introduced witnesses, were heard as before a jury,—all on matters tending to defeat the plaintiffs in the several cases,—yet the questions presented being collateral, and not going to the main issue of the indebtedness vel non, they had no right of appeal; and therefore the judgments denying their motions to dissolve the attachments and dismiss the suits were not binding, and can work no estoppel in the present suit, wherein exactly the same facts and the same title are set up. It is very doubtful whether the right to appeal from a judgment cuts much figure in determining

whether an estoppel results from such judgment. Sometimes the amount involved prevents a review of the judgment by a higher court, and sometimes the estoppel itself results from the judgment of the appellate court. The matters presented by the defendants in error in the attachment cases went beyond collateral issues. If they had been successfully established, the plaintiffs in attachment would have been denied the most valuable relief they sought, to wit, the appropriation of the attached property to the payment of their claims. It does not seem questionable that in such case the plaintiffs in attachment could have had the judgments of the circuit court reviewed on error. The act of 1891, establishing circuit courts of appeal, was then, as now, in force; and by that act jurisdiction is given to the circuit courts of appeal to review final decisions of existing circuit courts in cases where the jurisdiction of the circuit court is founded, as it was in the attachment cases, on diverse citizenship. If the motions of the defendants in error in the attachment cases had been granted, and the attached property turned over to the alleged liquidators, it would be difficult to distinguish the case as to the right of review from Railroad Co. v. Gomila, supra, where no doubt of the jurisdiction of the supreme court was suggested. If the plaintiffs in attachment could have had an adverse decision reviewed on error, why did not the defendants in error have the like right? The judgment of the circuit court was adverse and final as to them. It denied them the right to the property attached, and appropriated the property to the payment of the attaching creditors' claims. In connection with this, on an issue provoked by themselves, the court decided that the corporation known as the Taylor Brothers Iron Works Company, Limited, was not legally dissolved by the proceedings of the stockholders on the 27th of December, 1892. The court had jurisdiction; the parties were before it; the issue was made; and we feel constrained to now hold that the defendants in error, the alleged liquidators of the Taylor Brothers Iron Works Company, Limited, are estopped by the judgment of the circuit court in the attachment cases from now asserting against the plaintiffs in said attachment cases and against the present plaintiff in error, who holds title thereunder, that in fact, by the proceedings of the stockholders of the Taylor Brothers Iron Works Company, Limited, on the 7th of December, 1892, the corporation was dissolved.

We do not find it necessary to express any opinion upon the correctness of the judgments of the circuit court in the attachment cases, denying the relief sought therein by the defendants in error; but we do suggest that the voluntary dissolution of a trading corporation, insolvent or otherwise, without public notice, and after its creditors have been driven into the courts, should be viewed with more or less suspicion; and, when such dissolution is brought forward to defeat attaching creditors, we think the court should see that all the formalities prescribed by the laws of the state and the charter of the corporation to bring about a legal dissolution of the corporation are strictly complied with. Judge Billings, in his opinion, found in the record, given in the attachment cases, holds that

the provision in the charter of the Taylor Brothers Iron Works Company, Limited, providing for advertisement of proposed general meetings of the stockholders for the purpose of changing, modifying, or altering the charter, included in its meaning and purposes the matter of dissolution of the corporation; and that, as all such general meetings affected the public in regard to the then present indebtedness as well as future credits of the corporation, such preliminary advertisement could not be waived.    If Judge Billings was correct in this,—on which we express no opinion,—the Taylor Brothers Iron Works Company, Limited, does not even now appear to have ever been legally dissolved.    Leaving this aside, however, and basing our judgment entirely on the estoppel pleaded in this present case, we are of opinion that the judgment of the circuit court should be reversed. and the cause remanded, with instructions to award a new trial; and it is so ordered.